ELDREN W. ENZOR, Platoon Sergeant,
U. S. Army, Petitioner

v

UNITED STATES, Respondent

20 USCMA 257, 43 CMR 97

*Captain Monte Engler* argued the cause for Petitioner. With him on the brief was *Colonel Daniel T. Ghent*.

*Captain Merle F. Wilberding* argued the cause for Respondent. With him on the brief were *Colonel David T. Bryant* and *Captain Benjamin G. Porter*.

## Opinion

QUINN, Chief Judge:

A general court-martial convened at Fort Hood, Texas, convicted the petitioner of a number of offenses in violation of the Uniform Code of Military Justice. He contends that the conviction is void under O'Callahan v Parker, 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969), and United States v Borys, 18 USCMA 547, 40 CMR 259 (1969), because the offenses charged were "cognizable" in a civilian criminal court in Texas and had no element of military significance to justify the exercise of court-martial jurisdiction.

In Mercer v Dillon, 19 USCMA 264, 265, 41 CMR 264 (1970), we held that the limitation on court-martial jurisdiction delineated in *O'Callahan* and applied in *Borys* did not extend retrospectively to cases concluded before promulgation of the *O'Callahan* opinion on June 2, 1969. The petitioner was convicted and sentenced on April 2, 1968. On review before the board of review, he assigned a variety of errors, including one to the effect that the court-martial had no cognizance over the offenses, which was predicated upon the grant of *certiorari* by the Supreme Court of the United States in the *O'Callahan* case and grant of review by this Court in the *Borys* case. On May 5, 1969, the board of review affirmed the conviction. It rejected the petitioner's challenge to the court-martial's authority over the of-

fenses on the ground that established judicial precedent "affirmatively recognized" the exercise of court-martial jurisdiction. A year later, the petitioner filed with the United States Army Court of Military Review, as successor to the board of review, a motion for relief in the nature of *coram nobis* in which he again disputed the exercise of court-martial jurisdiction over the offenses charged. See United States v Borys, supra; United States v Shockley, 18 USCMA 610, 40 CMR 322 (1969). He contended that, since under the Uniform Code, he had thirty days within which to appeal to this Court from the decision of the board of review, his conviction was not final as of June 2, 1969, the effective date of the *O'Callahan* decision. In support of this contention, he relied upon Mercer v Dillon, supra. Sitting, *en banc,* a divided Court of Military Review denied the application. Thereupon, the petitioner filed this application for collateral relief from the conviction.

Petitioner's view of *Mercer* is overdrawn. For compelling reasons, in *Mercer,* at page 265, this Court restricted application of the newly-promulgated limitation on the exercise of court-martial jurisdiction to prosecutions begun after June 2, 1969, the date of publication of the *O'Callahan* decision, but mindful of the stages of appellate review allowed by the Uniform Code, it pointed out the necessity for

retroactive application of *O'Callahan* to the group of "cases still subject to direct review" as of June 2, 1969.

*Mercer* referred to, and contemplated, a class of accused still entitled to appeal from affirmance of their respective convictions by service boards of review, within a limited period, to this Court. The conviction of an accused in that small group was final as of the date of affirmance by the board of review, and the sentence could be immediately ordered into execution, if the accused elected not to appeal. United States v Green, 10 USCMA 561, 28 CMR 127 (1959). It did not refer to, or contemplate, retroactive application of *O'Callahan* to an accused whose conviction was affirmed by the board of review before *O'Callahan* and who did not appeal to this Court within the time allowed by the Uniform Code. In fact, in United States v Brown, 19 USCMA 629 (1970), the Court specifically declined to apply the *O'Callahan* rule retroactively to an accused whose conviction had been affirmed by the board of review before June 2, 1969, but who decided not to appeal to this Court until the time allowed by the Uniform Code had expired. No persuasive reason appears to overrule *Brown* and enlarge the limits of retroactive application defined in *Mercer* because the petitioner has elected a different proceeding. The title of a pleading is unimportant; what is important is the nature of the relief requested. This petitioner, as the petitioner in *Brown*, is outside the class of accused entitled to limited retroactivity. *Mercer* defined an accused within the class as one to whom affirmance by the board of review was not the final judicial action in the case sufficient to authorize execution of the sentence. Stated otherwise, the conviction was one in which the sentence was not yet ripe for execution. Since this petitioner took no action in regard to the decision of the board of review, that decision authorized execution of the sentence. The board of review's decision was promulgated before June 2, 1969, and it was the final judicial action in the case upon which to predicate execution of the sentence. The limited retroactivity of *O'Callahan* delineated in *Mercer* is, therefore, inapplicable.

The motion for extraordinary relief is denied.

DARDEN, Judge (concurring in the result):

Since this petitioner made a conscious decision not to petition this Court within thirty days after he was notified of the decision of the board of review, he waived his right to relief here. In this respect his position is no different from that of any other petitioner who elects not to appeal. Consequently I believe that discussion of when the petitioner's conviction became final is unnecessary to a decision on the real issue presented. Moreover, extraordinary relief in these circumstances would not be "in aid of" this Court's jurisdiction, a condition that must exist before we are empowered to use the so-called All Writs Act.

Accordingly, I concur in the result.

FERGUSON, Judge (dissenting):

I dissent.

In order to deny the appellant the relief he seeks, the principal opinion holds that the accused's conviction was *final* on May 5, 1969, the date of the decision of the board of review, despite the fact that the accused did not even receive a copy of that decision until June 9, 1969, some thirty-five days thereafter. *Finality on May 5th* is necessary to the denial of appellant's petition because this Court, in Mercer v Dillon, 19 USCMA 264, 265, 41 CMR 264 (1970), held that O'Callahan v Parker, 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969), would be applied "to those convictions that were not final before June 2, 1969, the date of the *O'Callahan* decision." I can only assume that the holding as to the date of finality of judicial action is a clear repudiation of this Court's statement in Brant v United States, 19 USCMA 493, 494, 42 CMR 95 (1970), that:

"*The publication of the general court-martial order* on December 31, 1968, *finalized* Brant's conviction. Article 76, Uniform Code of Military

**259**

Justice, 10 USC § 876." [Emphasis supplied.]

Brant's original petition for grant of review had been denied *by order of this Court on December 12, 1968,* yet we did not attach finality as of that date. The general court-martial order *finalizing* this petitioner's conviction was dated July 11, 1969, fully one month and seven days *after* the applicable date of *O'Callahan.*

The author of the principal opinion cites United States v Brown, 19 USCMA 629 (1970), as authority for the holding in this case. *Brown,* like this petitioner, decided not to appeal to this Court until the time allowed by the Code (Article 61(c), 10 USC § 867) had expired. A board of review affirmed Brown's conviction and he was notified of that decision on May 6, 1969. His petition for grant of review was placed in military channels on April 9, 1970, and filed with this Court on May 7, 1970. A majority of this Court granted a Government motion to strike Brown's petition for grant of review on the ground that good cause was not shown to relieve Brown from the default resulting from his failure to file within the statutory period. I dissented in *Brown,* and do so here, because I believed that Brown was questioning the jurisdiction of the court-martial to hear his case (O'Callahan v Parker, supra), which question may be raised at anytime. United States v Ferguson, 17 USCMA 200, 37 CMR 464 (1967). It is interesting to note that in their order in *Brown,* my brothers referred to the date on which Brown *received* the decision of the board of review (May 9, 1969) and made no mention of the fact that that opinion was rendered by the board on April 28, 1969. It can only be concluded that they believed that Brown's conviction was *finalized* on the 9th of May, twenty-four days *prior* to the effective date of *O'Callahan.* The holding in *Brown,* therefore, is distinguishable from this peti-tion, since Enzor, as noted, received a copy of the board's decision *after* the effective date of *O'Callahan.*

Even were I not to believe that the question is jurisdictional and, hence, may be raised at anytime, I am at a loss to understand the logic of a holding that accords finality on a date thirty-five days prior to the time the accused is informed of the decision to affirm and sixty-five days prior to the time in which, by statute, he has been allotted to continue his appeal, if he so desires.

One other reason distinguishes this case from *Brown* and, in my opinion, compels that we grant the appellant's motion for relief in the interest of justice. Brown gave no reason for his failure to appeal within the statutory period, while this appellant contends that he did not appeal on the *advice of counsel.* Counsel, at the hearing before this Court, acknowledged that he personally defended Enzor at trial and argued his petition before the board of review. He admitted that he had so advised his client not to appeal. He did so in the belief that had Enzor's conviction been overturned on the basis of *O'Callahan,* the appellant might well have been tried by the State of Texas, the situs of the charged offenses, and could have received a sentence of life imprisonment. I find this advice disturbing and unjust, especially in light of the fact that this same counsel, aware of this possiblity, had unsuccessfully argued the merits of *O'Callahan* before the board of review.[1] Even now, were we to reverse the appellant's conviction, he could be tried in civilian courts. That is the effect of *O'Callahan.*

I will not speculate on counsel's reasons for raising the question of *O'Callahan* at this time and declining to do so following receipt of the board of review's decision. Cf. Fay v Noia, 372 US 391, 9 L Ed 2d 837, 83 S Ct 822 (1963). I simply believe that in the interest of justice, the petitioner should not, be-

---

[1] Since, at that time, *O'Callahan* was pending before the Supreme Court, the board of review properly affirmed the appellant's conviction on the ground that established judicial precedent affirma-tively recognized the existence of court-martial jurisdiction over the types of offenses for which the appellant was convicted. Cf. United States v Borys, 18 USCMA 547, 40 CMR 259 (1969).

cause of the misadvice of counsel, be denied the relief to which he is entitled. O'Callahan v Parker and United States v Borys, both supra. Cf. Brant v United States, supra.

I would grant the petitioner's motion for extraordinary relief, reverse the decision of the Court of Military Review, and order the charges and their specifications dismissed.