UNITED STATES, Appellee,

v.

Captain Leon T. DAVIS, SSN 552–66–8362, United States Army, Appellant.

CM 437778.

U. S. Army Court of Military Review.

24 Sept. 1979.

Stephen Daniel Keeffe, Esquire and Captain James J. Parwulski, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Captain Dennis S. Cameron, JAGC, and Captain Stephen D. Smith, JAGC, were on the pleadings for appellee.

Before MITCHELL, DRIBBEN, and GARN, Appellate Military Judges.

OPINION OF THE COURT

MITCHELL, Senior Judge:

At a general court-martial, tried by military judge alone, at Fort McNair, Washington, D. C., appellant was convicted of absence without leave (two specifications), missing movement through neglect, and failure to obey a lawful order, in violation of Articles 86, 87 and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 887 and 892, respectively. The sentence as approved was dismissal from the service and a two thousand dollar fine.

Appellant's offenses were a result of his mistaken belief that he could unilaterally terminate his status as a military officer. Captain Davis, a medical doctor, entered the Armed Forces Health Professionals Scholarship Program while he was a third year medical student at the University of Southern California. Pursuant to the program, the Army paid appellant's medical school expenses for the remainder of the time he was in school and paid him a stipend of four hundred dollars a month. Also, he was appointed as a Reserve commissioned officer. In turn, appellant was obligated to serve two years on active duty following his medical education. On 7 March 1973, he executed his oath of office.

Following graduation from medical school appellant entered active duty and elected a one year military surgical internship at Madigan Hospital, Fort Lewis, Washington (which did not count toward fulfillment of the two year obligation). At Madigan, appellant discussed, with a career counselor and supervisory personnel, a career in the Army and a military residency in radiology. In furtherance of his desire for the residency, appellant applied for, and had approved, retention on active duty in an indefinite status (effective 23 June

1977). Appellant then performed his residency at Walter Reed Army Hospital, Washington, D. C.

In March of 1978, Captain Davis submitted his unqualified resignation from the service, alleging that the Army had not fulfilled certain promises made to him when he entered the service. Specifically, in his letter of resignation Captain Davis complained that he was told that he would receive speedy promotion in rank, whereas, in fact, the Army Regulation providing for promotion was changed after his entry onto active duty so as to provide for a longer time in grade for officers in the Medical Corps. He further complained of not receiving a "Variable Incentive Pay" which some other medical doctors received. Therefore, he contended that his contract was breached by the Government and that he was not obligated beyond his then current assignment as a resident in radiology at Walter Reed Army Hospital. Appellant's resignation was rejected. On 29 March 1978, Orders were issued directing him to report to a medical unit in the Republic of Korea on 4 August 1978.

Disregarding his orders and the rejection of his attempted resignation, appellant entered into an employment contract with a civilian medical institution in the state of Washington. He signed out of Walter Reed Hospital in July 1978, and proceeded on thirty days leave and travel incident to his permanent change of station to Korea. On 1 August he wrote a letter, from the state of Washington, to the Surgeon General of the Army refusing his new assignment, demanding an honorable discharge, and declaring his "agreement" with the Army to be void.

The offenses of which appellant was convicted grew out of his failure to be present in his assigned units, to board his aircraft for flight to Korea, and to obey an order to report to his superior officer. At trial he stipulated to all elements of the offenses except his status as a person subject to the Uniform Code of Military Justice.

■ On appeal, appellant claims a lack of *in personam* jurisdiction and relies for his argument on a brief submitted at trial. He does admit that the sentence adjudged and approved would be appropriate and legal if the court-martial had jurisdiction. He desires that this Court not only set aside the findings and sentence but that we direct his discharge from the Army. This latter prayer for relief is beyond the scope of this Court's powers. We also decline, for the reason set forth below, to accede to the former request.

■ The Supreme Court of the United States long ago noted the special nature of the "contract" that changes an individual from a civilian into a soldier. In ruling on the effect of an enlistment the Court said:

> Enlistment is a contract, but it is one of those contracts which changes the status, and where that is changed, no breach of the contract destroys the new status or relieves from the obligations which its existence imposes.

*United States v. Grimley*, 137 U.S. 147, 151, 11 S.Ct. 54, 55, 34 L.Ed. 636 (1890). *See Dickenson v. Davis*, 245 F.2d 317, 319 (10th Cir. 1957) (Service in the military . . . creates a status which is not and cannot be severed by breach of contract unfortified by a proper authoritative action.)

Appellant's case is not one which is removed from the *Grimley* holding due to any statutory incapacity to contract for military service, *United States v. Blanton*, 7 U.S.C.M.A. 664, 23 C.M.R. 128 (1957), or due to regulatory ineligibility, *United States v. Catlow*, 23 U.S.C.M.A. 192, 48 C.M.R. 758 (1974); *United States v. Russo*, 1 M.J. 134 (C.M.A.1975). *See United States v. Hampton*, 7 M.J. 284, 285–6 (C.M.A.1979).

Under the facts of this case there is no question that appellant's status changed to that of a military officer when he executed his oath of office and entered on active duty. *See United States v. Scheunemann*, 14 U.S.C.M.A. 479, 483, 34 C.M.R. 259, 263 (1964). In regard to that change of status, we do not believe that appellant was lured into the service through improper claims or promises by Government agents. There were some assertions at trial that appellant

was misled as to the quality of the facilities and training of medical personnel in the Army; however, it must again be noted that his claim of alleged breach, stated in his attempted resignation from the Army, was based on his disgruntlement with the speed of promotion and with his pay. Furthermore, appellant was apparently sufficiently well trained that he was able to secure board certification and a position in his specialty at a civilian medical facility in the state of Washington.

However, even if a breach of contract occurred (which we believe did not), appellant was not relieved from his responsibilities as a military officer. As the Court of Military Appeals said in *United States v. Noyd*, 18 U.S.C.M.A. 483, 490, 40 C.M.R. 195, 202 (1969):

> Fundamental to an effective armed force is the obligation of obedience to lawful orders. The obligation to obey a lawful order cannot be, and is not, as a matter of law, terminated on the mere occurrence of a condition or circumstance that might justify separation from the service. On the contrary, the obligation to obey continues until the individual is actually discharged in accordance with the provisions of law.

Appellant has not been released from his military obligation in accordance with law. He is therefore a person subject to the Code, Article 2, UCMJ, and thus amenable to trial by court-martial. *In re Grimley; Dickenson v. Davis; United States v. Noyd*, all *supra*. He may not terminate his status simply by forsaking his military responsibility.

The findings and sentence are affirmed.

Judge GARN concurs.

Judge DRIBBEN not participating.